TrippE, Judge.
B. J. Wilson & Company were the factors of W. C. Riddle. On May 5th, 1870, Riddle gave to Wilson & Company his promissory note, at thirty days, for $90,000 00, and a mortgage as security therefor on realty. The note was given, not for an exact amount of indebtedness then due, but for what might be then due, and for future advances. Wilson & Company had made before that time, and did afterwards make, large advances to Riddle — to an amount much larger than the amount of the note, but which, .by cotton forwarded them by Riddle, was reduced to about $68,000 00, as claimed by them, on January 25th, 1871. On that day, Riddle gave Wilson & Company four other notes, amounting to about $18,000 00, not as increasing his-indebtedness then owing, but as a part of the same $68,000 00, and as claimed by Wilson & Company, for considerations accruing after the making of the $90,000 00 note. Riddle claims it was for the whole balance of his indebtedness to Wilson & Company. At the time these four smaller notes were given, Riddle gave as security for them a mortgage on personalty for $7,000 00, and what are called crop liens for $11,000 00, jointly with Thigpen on part of said crop liens, and ...... on another portion thereof. Previous to this, in 1868, Evans, Gardner & Company, of New York, had obtained judgment against Riddle in the Circuit Court of the United States for some $5,000 00, and Wilson & Company had obtained a transfer of the execution issued thereon to themselves, and had entered on their books, as a charge against *Riddle, the money advanced for said transfer, and which amount is part of the $68,000 00 now claimed to be due by Riddle on the $90,000 00 note and mortgage.
On the 1st February, 1871, Wilson & Company transferred the $90,000 00 note and mortgage to Samuel J. Armstrong, of New York. Armstrong commenced suit on the note in the Circuit Court of the United States for the Southern District of Georgia, on the 17th March, 1871. Riddle filed a bill in said Circuit Court, praying, amongst other things, an injunction against said suit. After the hearing and overruling of a demurrer to said bill, Armstrong dismissed said common law action. The bill is still undisposed of by any order or decree of that Court.
Armstrong also commenced proceedings at the April term, 1871, of the Superior Court of Washington county to foreclose the mortgage of $90,000 00. To these proceedings a defense was made, and on the 20th January, 1873, á bill for injunction was filed to restrain Armstrong from prosecuting the same, and setting up generally the facts and equities contained in the last bill hereafter mentioned, the decision on which is here for review.
B. J. Wilson & Company foreclosed the mortgage on personalty, and instituted proceedings to enforce the crop liens for the four smaller notes, constituting the $18,000 00 securities. *458 This was done' in November, 1871, and on February 15th, 1872, Riddle obtained an injunction against these proceedings, alleging same equities, and praying, generally, similar relief as asked for in his bills against Armstrong.
B. J. Wilson & Company transferred the execution issued from the Circuit Court of the United States in favor of Evans, Gardner & Company, to one B. M. Hill, and said execution, on the 23d of May, 1872, was levied on the property of Riddle, and a bill was filed by him, on the 17th June, 1872, in said Circuit Court, to enjoin a sale under that execution.
On the 17th February, 1873, B. J. Wilson, as bearer, commenced an action against Riddle in the Superior Court of Washington county, on the $90,000 00 note.
*A11 of these suits were pending on the 18th day of March, 1873, except the suit in the Circuit Court of the United States in favor of Armstrong against Riddle, on the $90,000 00 note, which was dismissed by Armstrong; and Wilson & Company and Armstrong claim that such dismissal carried with it the bill which Riddle had filed in said Court to enjoin it, and also a supplemental or amended bill subsequently filed by Riddle in the same Court, embracing, an application for injunction restraining Armstrong from proceeding in the Superior Court of Washington county to foreclose the $90,000 00 mortgage, and setting up the same rights and equities as are alleged in the bill next referred to, and the decisicii on which, by the Court below, is here for review.
On the 18th March, 1873, the present bill was presented to the Chancellor for an injunction, reciting and charging all the foregoing facts as to the various suits, etc., that all of said evidences of debt and the securities therefor constitute but one debt, and that debt is whatever may be due, if anything, after a full accounting between Wilson & Company and Riddle on the $90,000 00 transaction, that said amount can only be ascertained from an examination of the books and accounts of Wilson & Company, embracing several hundreds of thousands of dollars, running through five or six years, that fraudulent charges and omissions of credits and mistakes are in said accounts, that said suits and levy by different persons are all for the same debt and in different jurisdictions, and that Wilson & Company are the real and only creditors and owners of all the evidences of debt, and that these facts make a case for an injunction of all the said proceedings in the State Court, and for all parties, to-wit: Samuel J. Armstrong, B. J. Wilson & Company, and B. J. Wilson, to be brought together in one suit, that the correct amount that may be due by Riddle, if any, may be ascertained, and the final rights of all parties determined.
Wilson & Company deny any fraudulent entries or omissions in their accounts, or any mistake now existing, or that the $7,000 00 mortgage on personalty is part of the $68,000 00 *claimed by them to be due on the $90,000 note and mortgage; that all of said securities are bona tide and *459 just, and that said sum of $68,000 is justly due by Riddle) and claim that the rights of the parties can be asserted at law, and a resort to equity is unnecessary. The Chancellor ordered this last bill to stand as an amendment to the former bill filed against B. J. Wilson & Company, and granted the injunction prayed for until further order of Court.
The great question in the case, and the one chiefly urged in the argument, is whether this is a proper case for equity to intervene by an injunction, so as to stay the various proceedings at law in the State Court, to consolidate parties and causes, and to bring this vast array of litigation to one head, and by one battle close what appears to be an interminable conflict.
A single statement would seem to settle this question. Samuel J. Arriistrong has a suit to foreclose the $90,000 00 mortgage as assignee 'thereof. B. J. Wilson, as bearer, has brought suit on the $90,000 00 note. B. J. Wilson & Company are proceeding to enforce the mortgage and crop liens for the $18,000 00, (the four smaller notes) $11,000 00 of this $18,000 00 are admitted to be but part of the same sum claimed in the $90,000 00 suits. Thus there are two distinct parties claiming the same debt, each in his own suit, and a third party claiming $11,000 00, a part of the same debt in another suit. It would hardly be possible for a defendant in these various actions by different parties to protect himself from loss, if not ruin, by any resources that are furnished him by the common law, or under any equitable rights ht may, by statute, have at law. If each plaintiff obtained the judgment he is seeking, two of them would have judgments for $68,000 00 each, and one for $18,000 00, or $154,00000 in all, when it is admitted that $68,000 00, with interest, or $75,000 06 —if the $7,000 00 mortgage is not part of the $68,000 00 — is all that is due. It is true that the two largest of these judgments would be shown by the record to be for the same debt, one at law on the note, and one on foreclosure of the mortgage 614 given to secure it, and that such a case often occurs, *and is legal and proper. So it may be, when the same creditor has both securities, the note and the mortgage, and a payment of either is a discharge of the other. But where the plaintiffs are different; a defendant would hazard much if such judgments were rendered against him. At any rate, where different persons are thus on the record, rival claimants for the same debt, the debtor has the right to bring them together, and by one judgment protect himself and ascertain who is his real adversary. This would be difficult, if not impossible to be done at law, and surely in such an emergency equity will not turn a suitor asking protection, from her door. The proceedings on the $18,000 00 securities, in still another name, another claimant on the same debt, certainly removes all doubt, and make the debtor’s demand for - equitable relief irresistible. No agency at law could grant him as full and ample remedy as he might require, and as equity only could grant him.
But, besides all this, if, under the equitable rights which the *460 debtor might have at law, he could, in all these separate actions by different parties against him, be heard in his defense at law as to their several rights, and as to his own rights, involved' in the question as to what is his true , indebtedness, if any. Yet the facts in this case, involving long and complicated accounts for several years, to the amount of hundreds of thousands of dollars, to ascertain the true balance due, the issues made on the validity and fairness of some of these securities, and how they are to be credited, if paid or allowed — all of which -would have to be investigated in each case, and most probably, if not certainly, by different juries, make it a strong case, “where a multiplicity o'f suits would render a trial difficult, expensive and unsatisfactory at law:” Code, section, 3075.
One other view: a creditor has a right to enforce all the securities he holds for a debt until the debt is paid, and in this case this right is being fully asserted. Suppose, on the trial at law on either of the $90,000 00 securities — the note or the mortgage — it should be adjudged that only the sum of $10,000 00 or $15,000 00 was due. That amount so ascertained * would be the amount of the judgment on the other of those two securities. But the $18,000 00 securities are respectively for $7,000 00 and $5,200 00, and two for $2,900 00 each. How would the judgment for $10,000 00 or $15,000 00 be disposed of or divided and appropriated between those several smaller securities ? How much of it would be taken' as part of the one or the other of the four small mortgage and crop lien papers ? The plaintiffs have asserted their right to enforce them, and they have this right, and the right to enforce all until the debt is discharged. But in the case put, (and complainant’s bill presents the case for such a result,) how can the rights of the creditors be enforced and the rights of the debtor be protected, except by one joint trial for all the parties, and of all the issues.
The difficulties that would attend the trial of these several cases at law would be still further complicated on account of the proceedings in the case of the levy of the Evans, Gardner & Company execution issued from the Circuit Court of the United States on the property of complainant. That execution is for a part of the debt, constituting the $90,000 00 claim.
Let the judgment of the Court below be affirmed.